The second and last case of the day is Bradley v. Attorney General, number 08-4184, Mr. Estrian, and Mr. Newkirk. Good afternoon, Your Honors. Good morning, Judge Aldisert. My name is Howie Estrian. I represent the petitioner, Heathcliff John Bradley, in this matter. I'd like to reserve four minutes for rebuttal. That's fine. Thank you. At the outset, I mean, maybe I'm going to work backwards a little bit. This person is talking about the adjustment of status, is that correct? Correct, Your Honor. And in order to be eligible for adjusting status, you have to be in this country legally, is that correct? Not necessarily, Your Honor. Okay. And you're thinking about what, 1187 as well? Yes. And why is it you don't necessarily have to be in this country legally under Immigration Nationality Act 245C4, which is an exception to individuals who enter the United States under a visa waiver who are eligible to adjust status if they are deemed to be immediate relatives, which means spouses, sons, or parents of American citizens. It's an exception to the entry under the visa waiver because most individuals who enter the United States under the visa waiver are not eligible to file for adjustment status. Yeah, because 1255 says that it prohibits an alien admitted as a non-immigrant visitor without a visa from adjusting status. Correct? Correct. Unless, it's C4, Your Honor. Yeah. And it says, unless you're an immediate relative. There's an exception, there's a specific exception. But he's not an immediate relative at the time he came here. Well, I guess you could do it afterwards, but don't you have to do it within 90 days? That's incorrect, Your Honor, and it seems to me that there's a misunderstanding regarding the 90 days because Congress did not in any way limit individuals who are immediate relatives to adjust status within 90 days. In fact, if an individual who's a non-immigrant enters the United States, Your Honor, and marries within the 90 days, in fact, within the 30 days, they are deemed to have committed fraud. So that is under the FAM regulations that the Foreign Affairs Manual basically has a 30-60 day rule that says any non-immigrant who enters the United States and marries within the first 30 days is committing fraud. And within the 30-60 days, it's presumed to have misrepresented their entry into the United States. So this belief that Congress somehow intended that individuals that come into the United States under the Visa Waiver Program are only limited to adjusting their status within the first 90 days is absolutely ridiculous. But what you're, again, what you're seeking here is adjustment of status. Adjustment of status is discretionary, right? You're right. That's correct, Your Honor. So I guess the only argument you really can make then is he is eligible to make his case with respect to adjustment of status. Is that correct? Correct, Your Honor. So explain to me how it is that we reach this pass. Mr. Bradley enters under the VWP, right? And you don't and really can't dispute that he completed and signed an I-94W form at the airport, right? Well, Your Honor, what we are disputing is that the signed waiver is not the actual waiver that he was supposed to execute. Will you answer my question? I'm sorry. You really cannot and do not dispute that he signed and completed an I-94W waiver form at the airport? We are disputing the fact that he signed it and there's no record of the effort. You have the attachment to it that he filled out. We have... It comes from you, doesn't it? Well, no. We have the portion of the I-94 that does not contain a specific waiver of his due process rights. Understood. But you have the portion. We all know that that portion is attached to it and it's ripped off and handed to the person normally. That's what happens. That's correct, Your Honor. And your client has that portion and he has had it in his possession. He gave it to you and you put it in the record. That's correct, Your Honor. Well, I'm now completely confused as to what your position is. Because it seems to me you can't factually take the position that he did not sign a form and at the same time say he did sign a form but he did so unknowingly and unintelligently. So which is it? What I'm saying is there's nothing in the record that has, that contains... I know what the record shows. I want to know what your position is. My position is that if he came into the United States and he has the I-94 card, that only means that there's a portion of it that was completed. It doesn't necessarily mean he intelligently or knowingly or voluntarily... No, no, we're not... This is the third time I'm going to ask the question. I'm not asking whether it was knowing and intelligent. I'm not asking whether you're taking the position that it was knowingly and intelligently signed. I'm asking you whether you are factually taking the position that there was no such form, that he did not sign the form, irrespective of its knowing and intelligent nature. Well, our position is that there's no evidence that he signed the form. And that's game playing. If he didn't sign that form, he wouldn't be here. That's right. In fact, he's in better shape, according to your position now, based on this I won't sign this. Or if he had said, I don't understand this and won't sign it, he would have been turned away at the gate, wouldn't he? Absolutely. Or even if he said, I'm too drunk to know what it's about, and I'm not signing anything. Keeping in mind that his print, with regard to the piece that you put in the record, is pretty darn legible. It's also difficult to do a breathalyzer test about 14 years afterward. Well, Your Honor, basically, the 11th Circuit decided that when there is no signed actual waiver in the record, that the individual cannot be held to a waiver of his rights. If he there is no evidence that he even signed the waiver, that the government had over a year to produce a signed waiver. But here's what we again, we're asking for common sense here. Sure. He wouldn't have been here if he hadn't signed this form. The government has not yet produced the actual signed form. But what he, your client, has been able to produce is the torn off part that was handed to him that he filled in, that is attached, we know, to the I-94W form. So it would appear, based on common sense, that he did, because he's here, sign the I-94W waiver. Is that correct? Well, based on common sense, exactly. I agree that he should have signed it. Your argument, I thought, would have been, to Judge Smith's questions, that yes, he signed the form. He did it in one sense knowingly, but it wasn't voluntary, and therefore, we should somehow separate the two, et cetera. Exactly. To put it another way, as a matter of advocacy, how in the world does it help you to argue, well, there's not a format there, or we don't know that there's a format there, or there's no form in the record? If your position is that he didn't know what he was doing because he was too drunk, then what difference does it make? Why are you wasting time arguing about the existence, the metaphysics of whether or not there's a format there or not? I don't understand. Honestly, this question was asked, and he put in his declaration that he doesn't recall signing anything. He said he may have signed it. We have the document, but it's hard for me to absolutely know clear and convincing evidence that he indeed signed it. I'm not asking what your client said. You're before the Court of Appeals now, and you're supposed to be arguing a legal position, and I can't for the life of me understand why you would be arguing an issue that doesn't make any difference whatsoever to your ultimate position. Our second point really goes to the position that if there's no evidence that he signed the waiver in the record, then there's nothing that they can base the allegations on that he signed. He has no business being here at all. He never signed a form. Then he shouldn't have been here. It was a necessary predicate to his hearing. Without a visa. I mean, it sounds like what I thought your argument was. We agree that he came into this country under the Visa Waiver Program. That's correct. If he came in under the Visa Waiver Program, one can presume, especially with what he now has in his possession, one can presume that he signed something. But he was, we allege that he was inebriated at the time and really didn't voluntarily know or didn't know what he was signing, and therefore, to some extent, perhaps it wasn't voluntary. And the question then becomes, and if you look at the Seventh Circuit case in Bayou, assume all those things that he didn't know, and therefore, he had to be knowing and voluntary. But what prejudice could it possibly be to him? Well, Your Honor. If he doesn't sign the form, he ain't here. If he does sign the form, he can only be here for 90 days. Sure. Assuming he signed the form, Your Honor, basically the prejudice that we feel exists here compared to the Seventh Circuit is that they basically, there's an inherent prejudice in these types of cases where he's been here for 14 years, he's married to an American citizen. Actually, the fact that he's been here for 14 years is the elephant in the room, because he woke up the next morning, if he was drunk, and he was sober. And if he's sober, he needs to understand, why am I here, how long am I able to be here? And there wasn't any attempt to check that out, not within the first 90 days, 180 days, not until he took the step in December of wherever it is, 07, of attempting to adjust status, and he put his head up, and he's now getting whacked for it. He came out of the woodwork, so to speak. Well, the statute that was enacted allowing individuals who come into the United States under the Visa Waiver Program. For 90 days. Making an exception for immediate relatives to adjust their status, they're not precluded from only adjusting within the 90 days. That is an absurd result, because as I've stated, if they were able to adjust their status within the first 30 or 60 days, they would be presumed of committing fraud, and the Congress is presumed to know the law in this area and would not in any way provide a statute for an exception for immediate relatives who are spouses of American citizens to be able to adjust their status. Regardless if they overstay or not, individuals who are immediate relatives have exceptions under 1255C2 is an exception. Understood. Why don't we hear from Mr. Newkirk, and then I think we have four minutes. Is that correct? Okay. Good afternoon, Your Honors. My name is Gary Newkirk. For the record, I'm Mr. Newkirk, do you seriously have a contention with respect to jurisdiction? You are having jurisdiction in this case? We don't have jurisdiction, or we don't have a contention as to jurisdiction to address the issues of the validity of the visa, but it is a limited jurisdiction. I think that's really the extent of it. This case really is about whether or not Mr. Bradley can allege What is the status of the efforts to locate the signed waiver? It has not been found, Your Honor. I mean, one argument that could be made by the other side is why should a visa waiver program entrant be treated any differently than the ordinary illegal entrant who comes across the border from some other country without going through customs? That person gets certain rights. Why do these people not get the same type of rights? Well, I think that part of what a BWP alien may be entitled to get, at least in other circuits, is an adjustment on a media relative. An alien who enters without inspection and is here illegally doesn't necessarily have that right, provided, of course, he hasn't filed a petition prior to April 30, 2001, which would be 245I. The answer is, well, he did not come in as an illegal alien. He came in under a special deal which waives the right to adjust status, except if it occurs within 90 days. Isn't that the answer to the question? Yes, Judge Aldiserra, I would agree. Yeah, I was throwing you a softball. When is the – how does the entry – the Seventh Circuit has said that, in effect, the entry fiction, that you don't have any rights before you cross the threshold after being let in by immigration, but once you do, you do have certain due process rights. Do you agree with that? Or do you think the test should be something different than what was stated by the Seventh Circuit in the Bayo case? Well, I think there are several issues the government has with Bayo case, but the extent of the due process is the benefit of his bargain, the consequences of his decision to enter under the BWP, and that is a removal process under 1187. That is the – and as long as the agency complies with due process in that respect, there's really no basis. How do you respond to the argument that your opponent makes that there is a tension between 1255 and 1187 such that he should be allowed, he is eligible to seek adjustment of status? Well, I would answer that question the way that every other court that has addressed that question has answered it. Really what the other courts have done is harmonized a very specific, very unique admission and removal process in 1187 with a very general adjustment statute in 1255. And so their solution to harmonize it is to allow them to do so as long as that application is filed within 90 days. I think Judge Albers has a question. Counsel, I don't understand that when this subject came up with inquiries on adjustment of status, that the position that you are taking now is the clear, well-reasoned position of six sister circuits who have been presented with this issue. The fifth, the sixth, the seventh, the eighth, the ninth, and tenth. And why should we not adopt that rule now? Isn't that, why aren't you stronger in saying that this is the law of all the circuits who have met the issue? Once again, you've stated it more eloquently than I have, Your Honor. I think that's exactly right. It is. Every other circuit that has addressed this issue has come out the same way. The 1187 Congress, from the outset, has been concerned about the abuse of this system, both for law-abiding aliens and for unlaw-abiding aliens, particularly. Well, your friend, I believe, began his arguments that this is ridiculous. I think he called even to even consider it as it would be a waste of time. And he did not tell us that all these other courts of appeals who had that same issue did. Okay, but that's a... That's correct. You know, in Petitioner's brief, he relies heavily on Freeman, but it doesn't cite it in the opening brief or the reply brief. Let me give you this, and we'll bring back about prejudice. A knowing and intelligent waiver is necessary if a constitutional issue is involved. Okay, we start out with that. And second, the only constitutional issue that I see can possibly be involved is due process. Now, if we go to Matthews v. Eldridge, was there any risk of erroneous deprivation here, where the situation is, if he signed the waiver, he would be in the same situation he is now? If he had refused to sign, he would have been removed summarily at the border because he did not have a proper visa. So under the circumstances, under Eldridge, he could have no possible way of recovering under a due process argument. That's absolutely correct, Your Honor. And is it what the Seventh Circuit said, that it's impossible for him to show prejudice? Yes. And especially here, where, of course, he has freely conceded that he's been admitted under the VWP and that he has overstayed. Really, the only issue for the agency is to determine whether or not he's removable, and there's really no dispute as to that at all. I have no further questions. Your Honors, I guess, really, this case is whether Mr. Bradley can forestall his removal by alleging that he was drunk at the time of his admission, 12 years after the fact. And as we've maintained in our brief all along, that's simply not a claim that is cognizable under this statutory framework. Thank you very much. Thank you for your time. Thank you. Mr. Estrian. I'd just like to address the fact that the statute, again, that we stated, the adjustment of status statute allowing individuals like Mr. Bradley to adjust the status as an immediate relative was intended for family unity purposes by Congress. And it makes no sense, again, I would like to repeat, I understand that other circuits have agreed with the Freeman decision. However, they've limited the Freeman decision to the facts of that case, where in that case the individual had married prior to entering the United States. In fact, on remand recently, Mrs. Freeman was denied the adjustment of status application solely on the basis that she had married and entered the United States and was held that she had misrepresented her entry into the United States. So to hold in this case that Mr. Bradley is not able to adjust the status or be able to renew his status, renew his adjustment of status, where there is no appeal for adjustment of status applications. And here his adjustment of status application was denied. And as an immediate relative, other immediate relatives have the ability to renew their adjustment of status before an immigration judge who would basically determine their eligibility, whether they should adjust or not. And we have to say that the statute is clear that these individuals are able to adjust. The Freeman decision – Well, the argument is that they're not free to adjust if they are not here legally. And that's a pretty strong argument. I mean, basically what it comes down to, you've got something that basically declares a timeout from the way things are normally done. You don't need a visa to come here. For certain countries, we're going to accommodate you. And the quid pro quo is that you agree that you're not going to contest anything by way of removal other than the possibility that you could file for asylum, and that's not this case. And that's what it's all about. It's an accommodation. It's a privilege given to somebody to come here without having to touch all the bases. And you don't come in unless you agree there's a quid pro quo for your coming in. And it's whether the government finds the piece of paper or not, and let's assume it doesn't, it really doesn't make any difference because he wouldn't have been here otherwise, and you've got the portion of the paper that was handed to you. So, you know, if you make the argument you make, perhaps within some period of time, but to wait until, what, 11 years later, 11-plus years later, and then attempt to adjust your status because you're trying to sort of get in through the back door because you realize that the front door is now closed, it doesn't seem like it's going to fly. Your Honor, all throughout the United States, the Immigration Service adjusts the status of individuals who have overstayed their status, who have entered in the United States under the Visa Waiver Program. Wait. They're not. I'm sorry, you have a question? No. They are not precluded from adjusting their status. That is a misconception. And to the State, the Newark District Office continues to adjust the status of individuals who come under the Visa Waiver Program who are immediate relatives. To hold otherwise would basically not take into consideration the statute that allows these individuals to adjust their status regardless of whether they overstayed or not. And it conflicts with some of the policies and intentions of Congress. Thank you very much. Thank you for being both helpful and coming before us today. We'll take the matter under advisement. Judge Ambrose, I think certain statements were made for oral argument, and it might be well to have a transcript of this argument available to us. If you would, then, afterwards, get together with the clerk's office and just have a transcript prepared of this oral argument and have the costs shared. Thank you very much.